UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

Marvin E. Franklin and )
Katherine W. Franklin, )
    Plaintiff(s); )
)
                                                  No. CV 97-P-137-S
-vs.- )
)
Sprint PCS Spectrum, L.P., )
    Defendant(s). )
)
                              Opinion

AUG 27 1998

Defendant's Motion for Summary Judgment was considered at the court's January 9, 1998 motion docket. For the reasons stated below, the motion is due to be GRANTED.

## Statement of Facts[1]

This action arises out of defendant Sprint PCS Spectrum, L.P.'s ("Sprint") construction of a personal communications services tower on property adjacent to the home of plaintiffs Marvin and Katherine Franklin ("the Franklins").

In 1992, the Franklins purchased a 40-acre tract in rural Blount County. There were other homes and farms in close proximity to the Franklins' property, but no businesses in the immediate vicinity. The property was not subject to any zoning regulations by local or municipal government. The Franklins purchased the Blount County property particularly for its relative seclusion and for the view afforded of the surrounding areas from the knoll in the center of the property.

---

1. The recitation of "facts" is based upon the materials submitted viewed in the light most favorable to the Plaintiff.

In 1993, the Franklins constructed a new home on the Blount County property. Mrs. Franklin designed the house herself and located the house on the parcel so as to take advantage of the view to the south and southeast of the property. The Franklins located the house on top of the knoll and away from the property lines in order to insure the family's privacy and to take full advantage of the view afforded from the knoll. The Franklins moved into their new home in 1993.

In October 1996, the Franklins learned that Sprint intended to locate a site for a cellular communications tower in close proximity to their property. Although the Franklins first understood that Sprint might be sharing an existing tower located to the west of the Franklins' property, they later learned that Sprint had decided to construct a tower of its own on the northwest corner of an adjacent parcel owned by Mrs. Mary B. Chamblee. Sprint's planned location for the tower was approximately 800 to 1200 feet south-southeast of the Franklin residence.

In November 1996, the Franklins, through counsel, contacted Sprint in an effort to discuss a solution to the problem of the new tower's location. These efforts at a resolution were unsuccessful and, in December 1996, the Franklins filed this action in the Circuit Court of Blount County. In their complaint, the Franklins requested both injunctive and monetary relief, alleging that the proposed tower would constitute a nuisance under Alabama law. Specifically, the Franklins alleged that

> when constructed and placed in service and operation, the aforesaid tower will substantially and materially interfere with Plaintiffs' use and enjoyment of their

property, in that it will cause electronic interference with various electronic equipment located on Plaintiffs' property, expose Plaintiffs to microwave or radio waves, and will emit lighting, all of which will cause annoyance, as well as cause visual clutter.

Complaint ¶ 8. In January 1997, Sprint removed the action to this court on the basis of diversity jurisdiction. Although the court subsequently denied Sprint's motion to dismiss this action in its entirety, on the basis of the preemptive effect of the Telecommunications Act of 1996, the court did conclude — and plaintiffs' counsel conceded at oral argument — that the Franklin's claims based on emissions of radio waves were specifically preempted by the Act. Accordingly, following the court's order on defendant's motion to dismiss, only plaintiffs' claims relating to the impairment of their view and relating to the light emissions from the proposed tower remained at issue in this action.

After the Franklins filed their state court action, Sprint leased the property for the new tower from Mrs. Chamblee and began construction. The 255-foot tower was completed and put into service in May 1997. Pursuant to federal regulations requiring structures of heights greater than 200 feet to be lighted, Sprint installed a "dual lighting system" on the communications tower. During daylight hours, a high intensity white strobe light flashes at the top of the tower. At night, that light is replaced by a flashing medium intensity red light, and an additional steady red light is turned on approximately halfway up the tower. This lighting system is the alternative most frequently used on towers in residential neighborhoods. In an effort to minimize the effect of these lights on nearby property owners, Sprint has added "ground shields" under the lights. However, pursuant to FAA and FCC regulations, Sprint cannot completely shield the lights from being observed by nearby property owners. Because the Franklin home is located on a knoll, at

3

a higher elevation that the base of the communications tower, the tower's lights are particularly noticeable from several rooms in the home. The unmanned tower does not emit any noise or otherwise interfere with the Franklins' use of their property.

## Analysis

### I. Obstruction of Plaintiffs' View

It has long been established under Alabama law that one property owner's claim to "light and air" cannot restrict an adjacent property owner's right to build a structure on his own property:

> [O]ne who erects a house . . . with a window opening upon the lot of an adjacent proprietor, does not thereby acquire such a right to the use of his window, as to deprive the adjoining proprietor of the right to build on his lot, in any manner his judgment, or fancy may dictate. . . . [I]t was the folly of the plaintiff to construct his house as to be dependent on the adjoining proprietor, for light and air.

*Ray v. Lynes,* 10 Ala. 63 (1846). For more than 90 years, this same principle has applied in connection with a purported right to a "view" from one's property. "No one can doubt the right of a party to build on his own land, *even though it entirely cuts off the view*, light, and air of his neighbor on the side next to such building." *Crofford v. Atlanta, B. & A. R. Co.*, 48 So. 366, 367 (Ala. 1908) (emphasis added). This principle was reaffirmed only three years ago in *Stewart v. Secor Realty & Investment Corp.*, 667 So. 2d 52, 54-55 (Ala. 1995) (Mountain Brook homeowners, whose neighbors built a home that blocked view of the street, had no right to a view from their home or an unobstructed view of their home from the street).

Given the Alabama Supreme Court's clear rejection of claims to the right to a view from one's property, the court is somewhat surprised that plaintiffs have continued to maintain such a claim. Apparently, plaintiffs believe that, while they may not have the right, under Alabama law, to a view, Sprint's interference with their view somehow gives rise to a nuisance claim. Although

4

plaintiffs argue that the Alabama Supreme Court has recognized that interference with a view can form the basis for a nuisance claim, this court concludes that plaintiffs have misinterpreted the case that they cite for that proposition. In *Southwestern Construction Co. v. Liberto,* 385 So. 2d 633, 636 (Ala. 1980), the Alabama Supreme Court affirmed the trial court's determination that a construction company's activities constituted a nuisance. The Supreme Court noted that there was evidence that "defendants' activity interfered with plaintiffs' enjoyment of their property and with their view of the Gulf." *Id.* However, the *Southwestern* court made only a passing reference to the interference with the plaintiffs' view, and affirmed the trial court's finding of nuisance based on a number of factors not present here.[2] In light of the Alabama Supreme Court's prior holdings in *Ray* and *Crofford* and its subsequent holdings in *Stewart* and *Gulf House Association, Inc. v. Town of Gulf Shores*, 484 So. 2d 1061, 1064 (Ala. 1985) ("The only thing for which protection is sought is a view of the Gulf of Mexico, to which [plaintiff] does not have a legal entitlement."), this court is unwilling to recognize a view-based nuisance claim by the Franklins.

## II. Tower Lighting

More than 25 years ago, the United States Supreme Court concluded that the Federal Aviation Administration's scheme of regulation was so pervasive that it impliedly preempted state law. *Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 633 (1973). In *Burbank*, the Court

---

2. "There was evidence that . . . defendants were using heavy equipment, with accompanying noise and vibrations which prevented residents from sleeping; that there was a noxious odor emitted by the diesel operated equipment . . . which could be smelled inside the plaintiffs' homes; that sand was kicked up and blown by the wind onto the adjacent lots; that sand blew off the trucks when they left the excavation pit; that . . . the entrance road from the state highway were deteriorating severely because of the heavy equipment using them; that the trucks sometimes blocked the roads and prevented residents from using them; that the activity was continuous from April to August; that the activity was conducted from as early as 7:00 a.m. to as late as 7:00 p.m.; and that defendants' activity interfered with plaintiffs' enjoyment of their property and with their view of the Gulf." *Southwestern*, 385 So. 2d at 636.

5

struck down a municipal ordinance that prohibited flights into and out of the Burbank airport between 11 p.m. and 7 a.m., finding that "a uniform and exclusive system of federal regulation [is necessary if] the congressional objectives underlying the Federal Aviation Act are to be fulfilled." *Id.* at 639. Federal regulation of tower lighting is pervasive. The Federal Aviation Act recognizes that tall structures pose a threat to air safety and specifically grants the FAA authority to prescribe safety regulations for broadcast towers. *See* 49 U.S.C.A. § 44718. The FAA has promulgated regulations that set out standards for proposed towers. *See* 14 C.F.R. § 77.19. The standards for tower marking and lighting are contained in FAA Advisory Circular AC 70/7460-IJ.

The Federal Communications Commission is authorized to require the painting and illumination of antennae when such structures constitute a threat to air navigation. *See* 17 C.F.R. § 17.1. The FCC bases its requirements on the lighting requirements specified in the Advisory Circular, and the FCC requires lighting for structures that exceed an overall height of 200 feet. 47 C.F.R. § 17.21. The FCC specifies the types of lights that may be used, the color of filters and paints, the type of bulbs, and the voltage supplied to the lights. *See* 47 C.F.R. §§17.53-54. Generally, lights on structures must be visible in every direction, for the benefit of aircraft pilots navigating within the area.

Here, plaintiffs claim that the lighting alternative chosen by Sprint for its communications tower constitutes a nuisance under Alabama law, notwithstanding the FAA and FCC regulations governing the proper lighting and marking of such structures. The materials presented to the court indicate that Sprint has endeavored to minimize the effect of the tower lighting upon the surrounding residences by installing shields below the lights. However, because the Franklin

6

home is located on a knoll overlooking the tower site, and because FAA and FCC rules require the lights to be visible at elevations equal to or greater than the level of the lights themselves, Sprint cannot block the lights from view by the Franklins. The deposition of FAA employee William Fish indicates that Sprint did, in March 1997, consult the FAA as to the possibility of removing or shielding the lights on the Blount County tower. However, on behalf of the FAA, Mr. Fish informed Sprint's counsel that the lighting on the 255' tower could not be reduced or removed. Under these circumstances, the court concludes that summary judgment is due to be granted as to the Franklins' lighting-based nuisance claim. The court is satisfied that, in this instance, the federal regulations regarding tower lighting preempt state law.[3]

Dated: August 26, 1998

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Robert R. Baugh
    Mr. Samuel M. Hill
    Mr. Michael E. Gabel
    Mr. Jesse P. Evans
    Ms. Laurie Boston Sharp
    Mr. Joseph P. Cowan

---

3. In their brief, plaintiffs suggest that, even if federal regulations require the lighting currently in operation on the Blount County tower, Sprint could reduce or cure the nuisance by shortening the tower from 255' to 200', so that lighting would no longer be required. The court is not persuaded by this suggestion. Even if Sprint, at great expense, lowered the tower by more than one-fifth, such that the lighting could be removed, the tower would still be a "nuisance" to the Franklins, since it would continue to spoil their pastoral rural view.

7